# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MARTIN SZIVULKA,**

        **Plaintiff,**

**v.**                                                                           **Case No. 04-C-29**

**JO ANNE BARNHART,**
**Commissioner, Social Security**
**Administration,**

        **Defendant.**

## DECISION AND ORDER

On April 17, 2000, Martin Szivulka ("Szivulka") applied for social security disability insurance benefits, alleging disability beginning in November 1998. His application, pursuant to 42 U.S.C. §§ 402(e) & 405(g), stated that he suffered from leg and foot pain, diabetic neuropathy, constipation, urgent diarrhea, chronic respiratory infections, congestive heart failure and pain. (Tr. 145.) That application was denied initially and upon reconsideration. (Tr. 68-78.) Subsequently, on January 10, 2003, a hearing was held before an ALJ ("the ALJ"). Szivulka was not represented by counsel at that hearing. On September 22, 2003, the ALJ issued a decision denying Szivulka's claim. The Appeals Council denied review of that decision. On January 12, 2004, Szivulka filed his appeal in this Court.

Before this Court, Szivulka has raised various arguments including allegations that his waiver of counsel was not legally adequate, the ALJ failed to fully develop the record in light of Szivulka's *pro se* status, the ALJ improperly assessed Szivulka's credibility, and the ALJ erred as a matter of law in his analysis of steps three through five of the sequential disability inquiry.

I.      Waiver of Counsel; Full and Fair Development of Record

First, the Court addresses the issue of waiver of counsel. Claimants seeking disability insurance benefits ("DIB") have a statutory right to counsel at disability hearings. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). Claimants must be informed of this right, which may be waived if the ALJ provides sufficient information allowing the claimant to intelligently choose whether to proceed *pro se* or with the assistance of counsel. *Id*. The Court of Appeals for the Seventh Circuit has identified the information that must be provided to ensure a valid waiver: "an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Id*.

In the present instance, Szivulka's waiver of representation was not properly informed. Specifically, the ALJ did not explain the limitation on attorneys' fees. This point is uncontested by the Commissioner and confirmed by the Court's review of the hearing transcript. Thus, because a valid waiver was not obtained, "the burden is on the Secretary

2

to show the ALJ adequately developed the record." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994). If the Commissioner establishes that the record was fully and fairly developed, Szivulka may rebut this showing by demonstrating either prejudice or an evidentiary gap. *Id*. at 246. A claimant may show prejudice if "the ALJ failed to elicit all of the relevant information from the claimant." *Id*.

    A.    Testimony Related to Relevant Time Period of Disability

Szivulka claims that the record was not fully and fairly developed. In support of this position, he forwards six arguments. First, he states that the ALJ did not inform Szivulka that his last insured date was December 31, 2001. (Pl.'s Br. at 8.) This omission, Szivulka argues, prevented him from conforming his testimony to the relevant time period of his disability. Compounding the problem, he continues, the ALJ "framed most of her questions in the present tense." (Pl.'s Br. at 8.)

Having reviewed the hearing transcript, the Court identifies some of the questions posed by the ALJ to Szivulka: "Do you have pain in any parts of your body that hurts on a regular basis?" (Tr. 38); "Where is one place you have pain?" (Tr. 39.); "How often do they [lower legs and feet] hurt?" (Tr. 39.); "Anywhere else you have pain?" (Tr. 39, 40, 41.); "And how often does that [Szivulka's lower back] hurt?" (Tr. 39); "How often do you have chest pain?" (Tr. 40); "How often do your toes hurt?" (Tr. 40.); "How often do your shoulders hurt?" (Tr. 41.).

3

The above-quoted questions and others posed at the hearing make clear that the ALJ inquired about Szivulka's condition extant *at the time of the hearing*, thus confirming Szivulka's allegation. The Commissioner, however, points to a portion of the hearing dialogue in which the ALJ asked Szivulka, "How does your condition in December of 2001, compare to the way it is now?" (Tr. 51.) Szivulka responded that his condition was worse. (*Id.*) This exchange, the Commissioner argues, shows that Szivulka was not prejudiced since the ALJ considered his present condition, which, according to Szivulka, was even worse that his condition during the insured period. (*See* Mem. in Supp. of Commissioner's Decision ["Supp. Mem."] at 7.)

The Court finds Szivulka's response to the Commissioner's arguments to be persuasive. First, the ALJ's only question about Szivulka's past conditions related to December of 2001, not the period of years preceding that date but after the onset date (November 10, 1998), which is relevant for the assessment of disability. Second, Szivulka, when asked how his present condition compared with that of December 2001, identified only one problem that had worsened, his breathing difficulties. (Tr. 51.) Thus, the Commissioner's proffered explanations are unpersuasive. The ALJ, at the hearing, failed to inquire into the relevant time period of disability.

B. Receipt of Post-Hearing Evidence

Szivulka's second attack on the development of the record concerns two exhibits, which were not provided to Szivulka, though the ALJ received them after the hearing was

4

held. (Pl.'s Br. at 8.) At the start of the hearing, the ALJ and Szivulka discussed medical records, which were currently not in the record before the ALJ. At the hearing, the ALJ obtained information from Szivulka regarding those records and indicated that she would attempt to obtain the same. The ALJ did receive certain records after the hearing; these documents appear in the record as Exhibits 8F and 9F. In the "List of Exhibits" in the administrative record, Exhibit 8F is identified as "Medical Records covering the period from 6/7/02 through 4/15/03 from Advanced Medical Clinic." (Tr. 5.) Exhibit 9F is listed as "Medical Records dated 5/7/03 to 6/2/03 from the Department of Veterans Affairs." (*Id.*)

Pursuant to 42 U.S.C. § 405(b)(1), when an ALJ conducts a hearing, the determination of disability must be made "on the basis of evidence adduced at the hearing." 42 U.S.C. § 405(b)(1). Szivulka claims the ALJ's failure to provide him with copies of certain medical records contravened the Hearings, Appeals and Litigation Law Manual ("HALLEX"), which requires such proffering of posthearing evidence unless the claimant has waived that right or the ALJ rules in the claimant's favor. HALLEX I-2-7-30.

The Seventh Circuit has not addressed whether an ALJ's violation of HALLEX procedure is reversible error. *See Cloute v. Barnhart*, No. 03-C-0737-C-, 2004 WL 1469374, at **8-9 (W.D. Wis. June 25, 2004). However, the Seventh Circuit has held that the Social Security Administration ("SSA") is bound by its own regulations. *See Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991). The Commissioner argues that no prejudice accrued to Szivulka because he readily could have obtained these records at any point. This argument,

5

however, misses the mark. The identified HALLEX procedure and 42 U.S.C. § 405(b)(1) ensure that a claimant has the ability to respond to those items under consideration by the ALJ. Regardless of whether Szivulka had access to these records, he could not have foreseen which records the ALJ would actually receive. Szivulka has also made a showing that certain information in those records is relevant to the period of disability considered by the ALJ. Thus, the ALJ erred by not providing Szivulka with copies of Exhibits 8F and 9F.

    C.    Omission of Letters Requesting Medical Records

Third, and related to his second argument, Szivulka states that the record should include the ALJ's letters requesting Exhibits 8F and 9F. Szivulka contends that he is unable to determine whether "the ALJ ordered all of the medical records to check for missing documents, or perhaps simply ordered records for later dates." (Pl.'s Br. at 9.) The Commissioner responds to this argument with one sentence, stating that Szivulka "has not alleged at any time that there is outstanding evidence from the relevant time period that the ALJ failed to procure, and Plaintiff has certainly not brought forth any such evidence to this Court." (Supp. Mem. at 7-8.)

The Court has looked at the record's list of exhibits and the release forms for Exhibits 8F and 9F. The 9F release form specifies, by date and content, which documents were sought. The record does not contain any indication that the documents comprising Exhibit 8F were ordered with the same specificity. In sum, the documents do not reveal the period of time for which documents were requested. Nevertheless, while the burden may be on the

6

Commissioner to develop the record fairly and fully, Szivulka cannot raise an issue simply by claiming that there may be more records without some support for that claim. While it would have been useful for the ALJ to include her request letters in the record, her failure to do so does not, by itself, suggest that the record is insufficiently developed.

   D.   Mental Impairments

Szivulka's fourth argument seeks to upend the ALJ's finding that Szivulka did not have any psychiatric treatment of mental impairments. (*See* Pl.'s Br. at 9; Tr. 15.) First, he states that the ALJ only asked about psychiatric treatment, and, from that inquiry, drew a conclusion about the existence of mental impairments. (*Id*.) Even if this were the case, the Court has already stated that the ALJ did not elicit information about the relevant period. Szivulka simply raises another argument why the questions posed may not have elicited relevant information.

In response, the Commissioner points out that Szivulka's application for DIB benefits does not make any mention of mental or psychiatric impairments. Similarly, "[n]o physician suggested that he undergo counseling or other mental health treatment and no one referred Plaintiff for any psychological treatment or counseling." (Supp. Mem. at 8.) In fact, Szivulka was scheduled to undergo a consultative psychological examination. However, Szivulka did not show up for his examination and stated that he did not think such an exam necessary. (Tr. 163.) He also did not attend the rescheduled appointment. (Tr. 164.)

7

Szivulka counters by identifying various pieces of information that purportedly demonstrate further probing of his mental status was warranted. The first source of this information is the hearing, at which Szivulka stated: "I can't deal with this stuff. It's just too much for me." (Tr. 43.) and; "I'm not as cognitive as I should be." (Tr. 31.). When asked about reviewing a file in his possession, Szivulka responded, "It's going to take a long, long time. That's the point I've been trying to impress. I'm so slow it's ridiculous." (Tr. 35.)

Beyond the hearing, Szivulka identifies evidence in the record that he believes is suggestive of mental impairment. (Pl.'s Br. at 10.) Specifically, he points to a 1999 examination note, by a Veterans Administration physician, finding Szivulka to be "long-winded." Also, a progress note, this one from November 1999, states that Szivulka had an unusual affect and perhaps suffered from obsessive compulsive disorder or depression or anxiety. (Tr. 215, 234.) The other evidence marshaled by Szivulka seems attenuated at best, such as refusing certain treatments, arriving late for a medical appointment, and acting belligerent towards medical staff. (Tr. 240, 253, 255, 291, 292.)

Szivulka, on appeal, has not linked these largely innocuous behaviors to a mental health diagnosis or condition. The Court is not trained in psychology or psychiatry and is ill-equipped to make clinical determinations. Szivulka's apparent frustration at the hearing, his tendency to tardiness, and sometimes prickly behavior do not suggest the symptoms of any mental impairment. There is but one explicit, clinical reference to a potential impairment in the record, *see* Tr. 234, and that comment simply states: "Unusual affect. Suspect OCD/

8

depression/ anxiety." (*Id*.) This lone reference, identifying a mere suspicion, absent more, did not obligate the ALJ to examine the issue of Szivulka's mental health.

E. Non-adversarial Nature of the Hearing

Szivulka, in his fifth contention regarding the development of the record, argues that his hearing was adversarial in nature. (Pl.'s Br. at 10.) In other words, the ALJ was not sensitive to his *pro se* status. Szivulka cites the ALJ's "argumentative approach" towards him and states that "[a]n attorney would have objected that Szivulka be allowed to complete his answers." (Pl.'s Br. at 10-11.) By way of example, he points to the fact that the ALJ failed to follow up with meaningful questions about Szivulka's mental health and changed the subject.[1]

Having reviewed the hearing transcript, it is clear that the ALJ certainly made a strong effort to channel Szivulka's attention and responses towards the questions posed. And, this did involve a fair amount of interruption by the ALJ while Szivulka was speaking. However, the Court does not find that the ALJ's approach rendered the proceedings "adversarial" in nature.

F. Formulation of Hypotheticals by Vocational Expert

Szivulka offers a final argument in support of his claim that the record was not fully and fairly developed. Szivulka argues that, if an attorney had been present, he would have formulated hypotheticals for the vocational expert that were not posed by the ALJ. These

---

[1]This is not an ideal example in light of the Court's finding that no probing of Szivulka's mental health was warranted.

9

hypotheticals, Szivulka continues, would have considered various limitations not addressed at the hearing. (*See* Pl.'s Br. at 11.) The government has not responded to this argument.

The hypothetical questions posed by an ALJ must fully set forth the claimant's impairments insofar as they are supported by medical evidence in the record. *Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994). If key impairments were overlooked in the hypotheticals, reversible error may exist. *See Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993). Sizvulka states that the ALJ did not formulate hypotheticals "including elements from the record, such as inability to stand for long periods of time, the claimant's strange affect, the need to urinate frequently, medication side effects, Szivulka's need to sleep in until noon, and similar factors . . . ." (Pl.'s Br. at 11.)

In the instant case, the vocational expert reviewed, and based his opinion on, Szivulka's work history and hearing testimony. (Tr. 53-54.) At the hearing, Szivulka testified to the effect of his medications on his digestive system (Tr. 46), his ability to stand for a continuous period of time (Tr. 49), and his need to sleep into regular working hours (Tr. 58). Thus, Szivulka can only contest the vocational experts failure to consider his "strange affect." This factor alone, does not suggest that the ALJ erred by not posing further hypotheticals at the hearing.

II.     Credibility Determinations

The second major prong of Szivulka's appeal consists of the claim that the ALJ's credibility determinations were inconsistent with applicable standards and law. ALJs must

10

comply with Social Security Ruling 96-7p when making credibility determinations. That Ruling requires ALJs to make explicit the reasons underlying their assessments:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered' or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

1996 WL 374186, at *4 (S.S.A. July 2, 1996). Thus, an ALJ cannot simply ignore an applicant's allegations, and must make his reasoning clear. *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).[2]

Though ALJs must conform to the above requirements, a court may find that complaints, which are not fully supported by the extant medical record, may prove probative of a claimant's credibility. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Still, a disparity between the objective medical record and the claimant's subjective complaints,

---

[2] Also relevant to the present inquiry, 20 C.F.R. § 404.1529 explains how an ALJ should evaluate a claimant's symptoms. That regulation explains that statements of pain will be considered against the backdrop of the record as a whole, including the objective medical evidence. 20 C.F.R. § 404.1529(a). As a threshold inquiry, the ALJ must determine whether the claimant's "impairment(s) could reasonably be expected to produce" the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b). Once this finding is made, the ALJ then considers the intensity and persistence of the claimant's symptoms in order to assess how those symptoms impact the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). Assessing the intensity and persistence of the claimant's symptoms entails considering various factors, including objective medical evidence, daily activities, the location, duration, frequency, and intensity of the claimant's pain, precipitating and aggravating factors, medications, treatments other than medication, measures implemented to relieve the symptoms, and functional limitations due to the pain. 20 C.F.R. § 404.1529(c)(3).

Finally, after the ALJ has assessed the intensity and persistence of a claimant's pain, he must determine the extent to which that pain affects the claimant's ability to perform work. *See* 20 C.F.R. § 404.1529(c)(4). A claimant's symptoms, including pain, "will be determined to diminish [his] capacity for basic work activities to the extent that [his] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id*.

11

absent more, cannot provide a basis for a negative credibility finding. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). Courts recognize that credibility determinations "often involve intangible and unarticulable elements which impress the ALJ, that, unfortunately leave no trace that can be discerned in this or any other transcript." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

When determining the effect of Szivulka's pain, the ALJ, after identifying Szivulka's education and age, proceeded to list his daily activities, including his ability to manage his own hygiene, perform basic daily activities and shop weekly. (Tr. 17.) The ALJ identified Szivulka's testimony regarding leg and foot pain and occasional lower back pain. The decision noted Szivulka's claim that he experienced chest pain during periods of exertion, such as carrying groceries.

The ALJ stated that "[w]hen the claimant's complaints and allegations about limitations and impairments are considered in light of all the objective medical evidence as well as the record as a whole, they do not reflect an individual who is so impaired as to be incapable of engaging in any substantial gainful work activity." (Tr. 17.) In support of this conclusion, the ALJ pointed to Szivulka's relative lack of medical care, his failure to attend appointments and postpone the same, and the resolution or stability of certain physical conditions. Considering these factors, the ALJ concluded that Szivulka's complaints "suggest a greater severity of impairment than is shown by the objective medical evidence and all of the above noted factors." (Tr. 18.) Szivulka disagrees with this assessment,

12

arguing that the ALJ did not consider why Szivulka failed to pursue treatment, placed undue weight on Szivulka's ability to perform rudimentary daily activities, and ignored aspects of the record documenting Szivulka's symptoms.

The Court recognizes that ALJs need not evaluate, in writing, every bit of evidence found in the record. *See Herron*, 19 F.3d at 333. Still, an ALJ may not selectively discuss only that evidence favoring his final conclusions. *Id*. In the present instance, the ALJ has complied, in part, with Social Security Ruling ("SSR") 96-7, insofar as he listed Szivulka's daily activities, the sources of his pain, factors exacerbating those conditions, and some of Szivulka's treatments. Of course, this analysis is somewhat cursory. For example, though the ALJ identifies Szivulka's daily activities, he did not state whether these activities supported Szivulka's subjective complaints. Similarly, and in accord with Szivulka's contentions, the ALJ, though identifying Szivulka's cancelled and postponed appointments, does not probe the reasons for his actions. If the ALJ found certain rationales unpersuasive, he was obligated to identify the credible explanations and further explain how they were outweighed by other, less credible rationales. Without identifying the reasons given by Szivulka for his behavior, the ALJ's decision does not make clear what weight was accorded to his failure to appear at appointments.

At bottom, the Court must determine whether the ALJ's brief references to Szivulka's lack of treatment and disregard for appointments, in tandem with objective medical signs displaying improvement in certain of his conditions, provides adequate explanation for the

13

ALJ's conclusion that Szivulka's subjective symptoms were not as severe as alleged. The Court concludes that the ALJ's decision does not comport with the above-cited requirements. The Court cannot readily discern from the opinion which of Szivulka's allegations of pain or symptoms were deemed incredible and which believable, or for what reasons. Furthermore, the few reasons proffered by the ALJ are not sufficiently analyzed to provide this insight.

III.     Step Three of the Sequential Disability Inquiry

Next, Szivulka claims that the ALJ erred in step three of the sequential disability determination. The Social Security Administration regulations set forth a five-step inquiry for determining whether a claimant is disabled:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, *see* 20 C.F.R. § 404, Subpt. P, App. 1;
> (4) whether the claimant can perform her past work; and
> (5) whether the claimant is capable of performing work in the national economy.

20 C.F.R. § 404.1520. As the Court of Appeals for the Seventh Circuit explained:

> If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy.

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

14

Szivulka alleges that the ALJ was required, under SSR 96-6p, to obtain the testimony of a medical expert before ruling on the issue of medical equivalence. (Pl.'s Br. at 15.) This argument ties into Szivulka's prior contentions related to Exhibits 8F and 9F, which, he claims, constitute new evidence that required the testimony of a medical expert on medical equivalence. (Pl.'s Br. at 15.) Specifically, Szivulka claims that those exhibits evidence a cardiac condition sufficient to meet or equal a listing in 20 C.F.R. § 404, Subpt. P, App. 1. Szivulka states that the ALJ failed to obtain the proper medical equivalence opinion and, thus, failed to properly consider his cardiac condition as a possible impairment under step three of the sequential disability inquiry.

The Court notes that the cardiac conditions referenced by Szivulka in his brief were identified by the Wisconsin Disability Determination Bureau in its Initial and Reconsideration Worksheets. (*See* Tr. 186-187.) Thus, it was not necessary to obtain further medical expert testimony related to those exhibits acquired after the hearing; this information was considered. Even if such information was considered, Szivulka may contend that his cardiac condition conforms, or is equivalent to, a listing in the Listing of Impairments. In support of this contention, he identifies the following evidence from the record: left ventricular severe diffuse hypsokinesis and depression of global functioning; left and right atrium dilation; and severe mitral regurgitation.

The Court will not consider Szivulka's hint of an argument. Szivulka cannot simply raise certain symptoms or conditions and expect the Court to draw conclusions therefrom.

15

In accord with Szivulka's representation, Appendix 1 does identify an impairment of chronic heart failure characterized, *in part*, by "left ventricular ejection of 30 percent or less." However, this is not the sole criterion or evidence required to establish a chronic heart impairment. The ALJ's decision states that she reviewed Szivulka's records related to chronic heart failure. While Szivulka could mount an argument that certain evidence was not fully or properly considered, the skeletal argument he presents in this instance is insufficient.

IV.   RFC and Past Work Determinations

Szivulka, for his fourth and fifth arguments, claims that the ALJ's finding of residual functional capacity ("RFC") was erroneous as was his analysis of Szivulka's past work. Szivulka claims that the RFC analysis was flawed "because the ALJ did not properly consider all of Szivulka's impairments, no physician of record opined that Szivulka could perform at such a high exertional level, the ALJ did not consider his capacity for work on a regular and continuing basis, and the ALJ did not provide a function-by-function assessment of Szivulka's work capacity." (Pl.'s Br. at 16-17.) Regarding the analysis of his past work (his fifth argument), Szivulka argues that the ALJ's examination lacks any relation to Szivulka's specific impairments. In other word, the ALJ's analysis was too general.

The Seventh Circuit has held that an ALJ, when assessing a claimant's ability to perform his previous employment, must identify the specific requirements of that job and then assess the claimant's ability to perform these functions. *Nolen v. Sullivan*, 939 F.2d

16

516, 518 (7th Cir. 1991) (citing *Strittmatter v. Schweiker*, 729 F.2d 507 (7th Cir. 1984)). This holding is consistent with SSR 96-8p, which identifies what an ALJ must articulate when considering a claimant's residual functional capacity to perform work-related activities. *See Morphew v. Apfel*, No. IP 99-655-C H/G, 2000 WL 682661, at * 3 (S.D. Ind. Feb. 15, 2000).

In the instant circumstances, the ALJ's decision does not list the demands of Szivulka's job as a data processor. Though the ALJ found that Szivulka "had the residual functional capacity to perform medium exertional work that required only occasional climbing, stooping and crouching," there is no description of the tasks involved in Szivulka's job. The ALJ relied upon the vocational expert's testimony in light of the claimant's vocational factors and found that Szivulka could perform his past work. However, the dialogue between the ALJ and the vocational expert at the hearing did not explore this information in any detail. (Tr. 53-56.) While an ALJ need not discuss all of claimant's abilities on a function-by-function basis, he must articulate "how the evidence supports his conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities." *Morphew*, 2003 WL 682661, at *3. Thus, the Court finds that the ALJ's analysis of Szivulka's RFC and past work was legally deficient.

In the final analysis, the Court will remand this action for further proceedings. The ALJ did not fully and fairly develop the record after eliciting a faulty waiver of counsel from Szivulka. Furthermore, the Court finds that the ALJ's credibility determination was not

17

clearly articulated. Also, the ALJ's analysis of Szivulka's RFC and past work was legally incomplete.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The final decision of the Commissioner of Social Security denying Martin Szivulka's application for disability insurance benefits filed on April 17, 2000, is **REVERSED** and this action is **REMANDED** for further proceedings consistent with this opinion.

Dated at Milwaukee, Wisconsin this 30th day of September, 2005.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa
Chief Judge**